Thank you, Your Honor. May it please the court, Todd Hiltz on behalf of Mr. Chavez-Villegas. This case comes before the court on a denial of asylum, withholding, and convention against torture. Mr. Villegas is a Mexican citizen and he came back to the United States after claiming that he was tortured and kidnapped in the state of Baja California, Mexicali. A border town. He also indicated, Your Honors, that he had been abducted, well, tortured, put before in Jalisco State. He was being extorted and forced to leave there too because of the problems that he was having in Jalisco and in Baja California. The immigration judge initially denied this. It went to the Board of Immigration Appeals and the Board of Immigration Appeals remanded the case so that the immigration judge could take testimony as it relates to acquiescence by the police and whether Mr. Chavez-Villegas could be able to relocate. But what's something that's a little at issue for Mr. Chavez-Villegas is that his claims regarding asylum and withholding of removal were pretty terminated in a sense because the court there found that he had a particularly serious crime. Before we get to that part, I want to ask you about a procedural question. You had indicated that because of Pereira that perhaps we didn't have a jurisdiction. But as you know, when the matter was remanded back to the BIA and your client filed a brief there before the BIA, it was a year after Pereira and he didn't exhaust it, did he? Well, it's my understanding at that point that Pereira did come after the initial proceedings. It's my understanding, and I think I said that at page 19, that Pereira relayed the petitioner's case, but that did occur after the briefing before the board. Again, perhaps I'm misunderstanding, but as I understand it, this matter was sent back. And when it went back, while it was before the IJ, Pereira was decided, but your client did not argue his position regarding jurisdiction under Pereira either before the IJ or the BIA after it had come out. Is that incorrect? I thought we did, your honor. And I believe that there was a mention of the jurisdictional issues that were raised. But what was being handled at the immigration judge level is that we were basically making a blanket Pereira objection to the proceedings. And then those objections were being, they weren't necessarily adjudicated because we're just waiting for the broader issues of Pereira to be decided. Do you claim that you have exhausted the Pereira issues? Well, and I don't think we, I do believe we did exhaust the Pereira issues. So you don't think we have jurisdiction? Oh, I do believe you have jurisdiction. Oh, no. Correct. In that sense, I believe that there's an underlying issue as it relates to Pereira that the Bastide Hernandez case that's now being heard also makes that an issue as these cases relate to jurisdiction. And even if we don't get to the issue as it relates to Pereira, I believe that even under the government's reliance upon Aguilar-Fairman and Karangithi, or however you pronounce that, that petitioner has demonstrated that all the available administrative remedies have been exhausted and that the entry of the order was fundamentally unfair and that the deportation proceedings did deprive him of the opportunity for that judicial review. So again, just to be sure I understand your position, you believe we do or do not have jurisdiction because of Pereira? I believe that creates an issue. Correct. But we have jurisdiction or we don't? That you do not have jurisdiction, unfortunately. Is there anything in the record that you can reference to that suggests that this was in fact exhausted? Because the timing works out so that Pereira comes out before the second time around before the IJ and certainly before the BIA, which was just what their decision was 2020. And I have to confess I didn't see anything in the record that showed that issue coming up here. Maybe if you don't have it in front of you, I don't take the rest of your time searching for it. But I think you're going to need to submit something to us pretty promptly to suggest that that issue was exhausted if you want us to address it. Understood. And I would rather than digging through documents during the remaining four minutes, I'd rather submit that if I'm able to find it subsequently to this hearing. Going back to the particularly serious crime issue. I believe that this case is distinguishable from the Pachenkov first holder case in that Pachenkov, a Russian citizen, was convicted of a 245A1, which was a felony. He had a suspended sentence of three years of state prison. He also received over 180 days of jail time. And that made the case an aggravated felony and a crime involving moral turpitude. For Mr. Chavez, that's not the case as it relates to any part of his penal code section 245A1 conviction, which was a misdemeanor where he served days in custody. And it was neither a maximum sentence over a year and not a crime involving moral turpitude or an aggravated felony. Let's say you're correct. Don't you have a problem on the nexus issue anyway that defeats your contention? The nexus as it relates to... Well... How so, Your Honor? Well, the agency affirms solely on the basis of the nexus decision, does it not? Well, and this is where I think it's important. So many times we have immigration judges or Board of Immigration Appeals making these decisions when they know that they already have a particularly serious crime in place. But the reality is that they relied on that particularly serious crime to foreclose the relief that's being sought under asylum and withholding of removal. And they don't necessarily, even though on its face, they make these decisions that the asylum case was a wanting or the withholding of removal case lacked the predicate analysis to be a particular social group or... I guess what I'm saying is, let's take your point. Let's say that the court agrees with you about your analysis in terms of the failure to properly analyze particularly serious crime. But even still, there are two elements that have to be satisfied. And the second one is nexus. And the court, rather the BIA and IJ said there was no nexus. So don't you lose on that anyway? As it relates to the actual, assuming that there is no particularly serious crime, and then they look at the analysis. Right. No, and that's where I'm saying that their nexus argument is... Well, and my argument, your honors, would be that he does, that that was air for the Board of Immigration Appeals to find that he did not create or have the sufficient documentation to show that he had in fact been... What evidence compels that conclusion? Well, the finding of credible testimony by the immigration judge that he was in fact kidnapped, that he was picked up by the Black Tahoe, that he does have a fear of returning to Mexico, and that because of... How does his testimony establish the cause of the attacks about which he testified? That is, well, his argument, well, his testimony... I know his argument. How does the evidence compel that conclusion? I mean, I really don't think it does. That's the problem that Judge Smith has raised. And we've been waiting for an answer, but so far, I haven't heard much. It's his testimony that it was the new generation cartel that kidnapped him, the new generation cartel that... And he knows that how? Based on his understanding of the area and... Basically, his inferences and his own surmise, but so far, that seems to be it. We're out of time. Either of my colleagues have additional questions for Mr. Hills. All right. Thank you, Mr. Hills. Ms. Martin of the Attorney General. Good morning, Your Honors. May it please the Court, Sarah Martin for the U.S. Attorney General. Your Honors, this Court should deny the petition for review because, among other reasons, the petitioner here did not establish a nexus to a protected ground, and his eligibility for CAF deferral of removal is based on subjective, speculative claims that belie the record. First, this Court can outright reject the petitioner's claim that jurisdiction never vested in the immigration court based on a defective notice to appear, because first, as Your Honors pointed out earlier, he did not exhaust these claims before the agency, and secondly, this Court's binding precedence squarely forecloses that argument. Turning to the merits of the petitioner's claim, his conviction under California Penal Code 245A1 did constitute a particularly serious crime, which rendered him ineligible for asylum and withholding of removal, and the agency did not abuse its discretion in reaching that determination. But even if the Court finds that it was not a particularly serious crime, or that that bar does not apply, which it does in this case, the record does not compel the conclusion that the petitioner established a nexus to a protected ground here, again, as he needed to do for asylum and withholding of removal. Finally, the petitioner's eligibility for CAT, Convention Against Torture, deferral of removal, his eligibility has not been established based on the fact that he did not compel reversal of the deferral denial based on his subjective and speculative claims, which belie the record. Accordingly, the Court should deny this petition for review. Counsel, just an arguendo. If we decide to reach the merits of the jurisdictional issue, notwithstanding the apparent exhaustion issue, should we await the outcome of our United States v. Bastida Hernández case? You say that controls this case. Do you agree we would wait if we reach the merits of the jurisdictional issue? So, setting aside the exhaustion argument, for now, is the question. Your Honor, this Court does not need to await the results of Bastida Hernández. Potentially, the outcome of that case is a large one, because it does deal with jurisdiction. But we have also cited Karangiti and Aguilar-Ferman, and petitioners have not pointed out how those cases don't apply here. This case can rest squarely on those decisions, because in Karangiti, especially, the Court said, when there's a notice to appear that doesn't state the date and time of the petitioner's hearing, but there's a later notice of hearing that cures that defect, then jurisdiction vests with the agency. And that's the situation that we have here. Petitioner received the notice to hear, has never contested that that was the case, and certainly did not timely contest that. Counsel, I personally agree with you. I wrote the dissent in Bastida Hernández, making the very argument that you do now. But our Court has taken it on bond. I hope we'll agree. But, in the meantime, if we reach the jurisdictional issue, don't we have to wait to see what our Court says? If we reach the jurisdictional issue. If we're not exhausted, we don't have to wait. But if we did, don't we have to wait? No, because Karangiti and Aguilar-Ferman substantially address the issue in this case. Again, this would not be the case to hold because of the exhaustion issue. This is a case where the petitioner never raised it until now, and I realize you're asking about, you know, if you reach that. But Karangiti and Aguilar-Ferman are strong enough grounds in this case for you to decide the case right away and not have to hold it. Other questions for counsel by my colleagues? I guess I have one question, and it has to do with particularly serious crime. We're dealing here with somebody who was sentenced not on a felony or not for years, but for 60-some days. How does that amount to being a particularly serious crime? If the definition should in some fashion reflect the severity of the underlying offense, and the Court that dealt with the underlying offense imposes a jail time sentence, but not a heavy sentence, what makes it particularly serious? So here, Your Honor, recognizing that the sentence and taking that into account, agency's task nevertheless was to look at the elements of the crime, the facts that were involved, and it is now the Court's role to decide whether the agency abused its discretion in reaching that determination. Here, the immigration judge took a certain view of the events. She recounted that witnesses to the crime saw that he raised a copper pipe in anger and struck somebody. So those facts here, as much as Petitioner has tried in his brief to say that there's a factual dispute here, that's not really before the Court. Did the agency do something that was completely outside the bounds? Did it abuse that discretion in reviewing all of those facts and the law here? In fact, the immigration judge made those findings that I mentioned about the copper pipe, listing the crime itself, and then the Board went on to cite Pachanko v. Holder, where this Court held that the agency did not abuse its discretion. And so in that way, although Petitioner seeks to distinguish Pachanko factually, in fact, the cases are similar in that, again, the Court found their discretion was not abused, and similarly should find the same here. Other questions by my colleagues? I guess not. Do you have additional argument you wish to make, or are you going to submit? I submit, Your Honor. Thank you very much for your time. Very well. Mr. Hiltz, you used up your time, but because your colleague has been so gracious in ending early, we're going to give you an extra minute to respond, so I'm sure you'll use that wisely. Oh, I thought there was going to be a question. Your Honors, with respect to the nexus, the testimony by Mr. Chavez sufficiently showed that he was part of a social group that's being abused and subject to torture by the Next Generation cartel. He explained that he suffered harm and threats in Jalisco and in Mexicali. Based on that, he took flight and came here to the United States where he asked for asylum. I believe that the particularly serious crime should not have been found, and I believe that the nexus based on his testimony should support a finding that he was eligible and should have his asylum application. But, Counsel, you didn't ever answer Judge Clifton's question. What compels, what testimony, substantial evidence compels a finding of nexus here? I didn't find any. I'm struggling with it. What are you pointing to? It's the kidnapping in Mexicali. It's, and I hate to use the words, in general, because that's not going to create the nexus, but specifically as it relates to Mr. Chavez, he was, in fact, kidnapped. He was subject to extortion. These are specific things that happened to Mr. Chavez which he reported to the police. Well, but subject to extortion isn't enough. Being a victim of a crime isn't enough. What links it to a protected ground and what evidence supports the purported link? And it's his claim that this protected social group is those individuals that are being attacked by the cartels that are running rampant. I mean, take into account that he's from Jalisco. This is the same state where the president of Mexico released El Chapo's son because they cannot control the Sinaloa drug cartel in the state of Jalisco. That's where Mr. Chavez was. These are the things that were, an individual, the president of the United States of Mexico cannot protect and had to acquiesce to the cartel. And this is on that level and it's on every other level throughout the state of Mexico. And when an individual is subject to these types of problems, this torture, this kidnapping, that is the nexus. Okay. I think we have your testimony. We thank both counsel for your argument. The case of Chavez-Villegas v. Garland is submitted and we thank you. Thank you very much. Thank you.
judges: CLIFTON, SMITH, WATFORD